107 N.J. Super. 487 (1969)
259 A.2d 241
AVON SHEET METAL CO., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
HERITAGE HOUSE ASSOCIATES, A PARTNERSHIP CONSISTING OF EUGENE KLEINWACKS, MELVIN TOBIAS AND MAX DRILL, DEFENDANTS.
Superior Court of New Jersey, District Court, Essex County.
Argued November 6, 1969.
Decided December 1, 1969.
*488 Mr. George Y. Sodowick appeared for plaintiff. (Messrs. Eichler, Rosenberg & Silver, attorneys).
Mr. Leon Sach appeared for defendants.
YANOFF, J.D.C.
Plaintiff seeks a contract recovery in two counts, one for the sum of $868.73, the other for the sum of $247.20, aggregating more than $1,000. Plaintiff refused to waive the excess over $1,000. The action was instituted prior to enactment of L. 1969, c. 177, effective October 14, 1969, and tried subsequent thereto. The testimony impels the following findings of fact and conclusions.
Defendant Heritage owns and operates an apartment house, known as Heritage House located in Morristown, New Jersey. The structure was built by Max Drill, Inc., which had employed Keith Crossman as project superintendent in the construction of Heritage House. Leaks appeared in the roof after the building was occupied.
Heritage notified Philip Drill, who was both vice-president of Max Drill, Inc., and the person who "ran the job" on Heritage House, about the leaks. Drill, in turn, communicated with plaintiff and asked it to patch the roof as best it could. Crossman lived in the building at the time *489 and it was expected that he would handle a portion of the job, as agent for Drill. As a result, Leonard Tobias, an engineer employed by plaintiff, met Crossman on the roof and received from him specific instructions as to the areas to be repaired. Count I seeks recovery for the cost of doing this work. Crossman also asked Tobias to construct and install scuppers and leaders in another portion of the house for purposes not connected with the leaks. Count II seeks recovery for the price thereof. The scuppers and leaders were constructed but not installed because the price for the other work was not paid.
Heritage denies that Crossman was its agent for the purpose of ordering the scuppers and leaders, but does not dispute that Drill was authorized to order the roof repair on its behalf. The major defense to Count I is that the repairs did not remedy the leaks.
With respect to the scuppers and leaders, the defenses are that the order was not authorized, that the materials were not installed, and that the contract was not part of the roof repair conract, but a separate one.
Preliminarily, the attention of the court is called to the fact that plaintiff's claim exceeds the sum of $1,000, leaving it to the court to determine whether it has jurisdiction.

I
The jurisdictional issue will be considered first.
Clearly, County district court jurisdiction over the subject matter is restricted by the monetary and other limitations specified by statute. Friedman v. Podell, 21 N.J. 100 (1956); Andriola v. Galloping Hill Shopping Center, Inc., 93 N.J. Super. 196 (App. Div. 1966); Besser v. Krasny, 114 N.J.L. 146 (E. & A. 1934). The monetary limitation of the court has been increased many times,[*] but whether an *490 increase in jurisdictional amount operates on pending cases has not been determined.
For the purpose of determining jurisdiction, plaintiff's claims should be aggregated. 17 N.J. Practice (Fulop, District and Municipal Courts), § 175, at 82 (1954). In negligence actions, however, when "several distinct * * * claims are * * * asserted in one action on separate counts or otherwise" the county district court has jurisdiction notwithstanding that the said claims in the aggregate shall exceed $3,000.00 exclusive of costs, provided none of the separate distinct claims * * * exceed $3,000.00." N.J.S.A. 2A:6-34.1 See Ricciardi v. Rabin, 79 N.J. Super. 7 (App. Div. 1963). If the jurisdictional limits have been exceeded, under the former practice the action could be dismissed, Mooney v. Woolhouse, 77 N.J.L. 325 (Sup. Ct. 1909); or under current practice, the excess over $1000 waived, Andriola, supra, or the cause transferred to the County Court, Vorhies v. Cannizzaro, 66 N.J. Super. 551 (App. Div. 1961); see concurring opinion of Judge Conford in Ricciardi, supra, 79 N.J. Super., at 10.
If L. 1969, c. 177 (N.J.S.A. 2A:6-34), effective October 14, 1969, increasing jurisdiction in contract actions to $3000, is applicable to causes instituted prior thereto, disposition of the excess over $1000 need not be determined, and we hold that it is. The only change made by the amendment is substitution of larger amounts for previous jurisdictional limits. Significantly, the act reads:
1. Section 2A:6-34 of the New Jersey Statutes is amended to read as follows:
(a) Every action of a civil nature at law, other than a proceeding in lieu of a prerogative writ, and every action to recover any penalty imposed or authorized by any law of this State, where the debt, balance, penalty, damage or other matter in dispute does not exceed, exclusive of costs, the sum or value of $3,000.00, exclusive of costs, shall be cognizable in the county district courts of this State.
By its terms (§ 5) the act is effective immediately. "Cognizable" is defined, "in law, within the jurisdiction of *491 a court; * * *" New Twentieth Century Dictionary Webster's (2nd ed.) The simple substitution of figures, complied with the immediate effective date, means that upon passage of L. 1969, c 177, the jurisdiction of the court was enlarged.
The same result is reached by applying general principles of statutory interpretation to what is, after all, a procedural change.
While statutes normally operate prospectively only, Nickell v. Gall, 49 N.J. 186 (1967), statutory language indicating a legislative intent that the statute operate retrospectively is given effect, in the absence of constitutional limitations, Howard Savings Institution v. Kielb, 38 N.J. 186 (1962); Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372 (1954). Remedial and procedural statutes are ordinarily given retrospective effect where the statute provides a change in the form of a new remedy for an existing wrong. Pennsylvania Greyhound Lines, Inc., at 381. Thus, a statute permitting a 5/6ths jury verdict was held applicable to pending cases because the rights affected related to remedy or procedure. Morin v. Becker, 6 N.J. 457 (1951). Here, both the language of the amendment and the nature of amendment impel the conclusion that the legislative intention was to enlarge the jurisdiction of the county district court, not only as to cases instituted subsequent thereto, but as to cases already pending. This is particularly true in view of the current legal disposition to override procedural technicalities in order to deal with the substantial issue involved. The language of Judge Gaulkin in Ricciardi, supra, well expresses this tendency:
The drive of the present practice in all of our courts is to sweep aside all shibboleths and impediments which stand in the way of the swift decision of controversies on their merits, and even statutes which fix the jurisdiction of particular courts are interpreted in the light of our rules and our present practice to achieve that goal. [79 N.J. Super., at 9]
It is instructive that of the three cases which recently dealt with situations in which recovery in the county district *492 court exceeded its monetary jurisdictional limit, only Andriola, supra, failed to find a means to sustain the recovery. Vorhies and Ricciardi, both supra.

II
The issue as to the roof repair is whether the contractor or the owner bore the risk of successful performance. It is not contended that the quality of workmanship or materials was inferior. Defendants argument is that it was the obligation of the contractor to rectify the leaks, and that in the absence of such rectification plaintiff may not recover.
In America-Foreign S.S. Corp. v. 9,000 Tons of Manganese Ore, 109 F. Supp. 765 (D.N.J. 1952), Judge Forman said
Whether a promise is made in consideration of actual performance or whether a risk of performance is assumed by the other party is a question of fact, with the presumption in a doubtful case said to be in favor of the former interpretation. [at 773]
In 6 Corbin on Contracts, § 1333, at 365 (1962), dealing with the situation in which "supervening discovery of facts * * * make the promised performance more difficult or expensive", the author said:
In every case of the kind now under discussion, the Court must be alert to weigh any evidence to show a custom throwing the risk upon one party rather than the other, or to show that there was a mutual contemplation of its being borne by one of them. [at 371]
The testimony of Philip Drill shows conclusively that the risk of performance was to be borne in this case by the owner. Max Drill, Inc. was the agent for the owner in entering into the contract with plaintiff, and the owner stands in his position. His testimony makes it plain that the repairs were to be made on an experimental basis. He stated frankly that if plaintiff did not stop the leaks, he would still be entitled to payment. Under the circumstances there must, therefore, be a finding of fact that the risk of performance was upon the owner, and that plaintiff is entitled *493 to recover a judgment on the first count. Cf. Kennedy v. Reece, 225 Cal. App.2d 717, 37 Cal. Rptr. 708 (D. Ct. App. 1964), in which it was held that a contract to dig a well did not guarantee that water would be produced. Cf. Mechanical Devices Co. v. General Builders, Inc., 27 N.J. Super. 501 (App. Div. 1953), rev'd 15 N.J. 566 (1954).
Defendant must prevail on the second count. While Crossman was defendant's agent, via Philip Drill, as to the roof leaks, Drill had no authority to order scuppers and leaders, and in consequence could not confer authority upon Crossman.
It is also clear that the contract, if any, with respect to the scuppers and leaders was distinct from the roof repair. While, under certain circumstances, nonperformance of a material nature of contract obligations on one side justifies refusal on the part of the other side to continue performance Restatement, Contracts § 317, at 471 (1932); Giumarra v. Harrington Heights, Inc., 33 N.J. Super. 178 (App. Div. 1954), aff'd 18 N.J. 548 (1955); Ridgely v. Walker, 82 N.J.L. 341 (Sup. Ct. 1912), aff'd 86 N.J.L. 590; Dixon v. Smyth Sales Corp., 110 N.J.L. 459 (E. & A. 1933), this is not such a case. Since the contracts for roof repair and supply of scuppers and leaders were separate, nonperformance on the part of the owner of a promise under one contract could not justify plaintiff's nonperformance under another contract. Had there been evidence showing that plaintiff was justifiably concerned about collectibility, there might have been reason for its refusal to deliver and install the scuppers and leaders, in conformity with its contract obligation. The scuppers and leaders were of no value to the owner without installation. In a construction contract the builder must render substantial performance to be entitled to recover. Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956). Since plaintiff did not perform its contract obligation with respect to these items, it is not entitled to recover, and there must be a judgment for defendant on the second count. Restatement, Contracts, § 399 (1), at 751 (1932).
NOTES
[*] L. 1873, c. 119, Part I, p. 245; L. 1877, c. 150, §§ 7, 8 and 9, p. 234, L. 1898, c. 228, p. 556; L. 1923, c. 87, p. 167; L. 1950, c. 219, p. 546; L. 1953, c. 297, § 1, p. 1836.